We are now recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Robert D. McLaren presiding. Your Honors, the second case on the docket this morning is 2-21-0752, the People of the State of Illinois, Plaintiff Appellee v. Peter E. Holland, Defendant Appellant. Arguing for the appellant, Mr. Brendan W. Kaver. Arguing for the appellee, Ms. Pamela S. Wells. Thank you. Mr. Kaver, you may proceed. Thank you, Your Honor. May it please the Court, Your Honor, Justice McLaren, Justice Hutchinson, pardon me, and Justice Jordansen. I believe that Peter Holland was convicted for one count for which the state did not prove the element of sexual gratification. The state, in its response brief, points out to the Court a list of facts that it believes supplement the state's proving of the sexual gratification element that it claims to be related to the count of conviction. The count of conviction for Peter Holland was one count of a touching of his hand to B.R.B.'s breast. The two counts of acquittal relate to many of the factors that the state sets forth in its response brief. The element of sexual gratification is an element that is well known to the people. It is a requirement. It is not substitutable by any actual evidence. It must be proven and there must be something. The one thing that the state is correct about as it relates to the element of sexual gratification is that it may be proved circumstantially. We concede that point. The case law is clear that it may be proved circumstantially in a number of ways. We acknowledge that in our opening brief. However, simply because an element is able to be proved circumstantially, it does not mean that it is. The facts of this case were that on several occasions Peter Holland himself acknowledged that when he touched B.R.B.'s breast, it was while he was tickling her. This may be unpalatable to the state. It may be unpalatable to the court. However, that fact alone does not supplant the people's requirement of proving the element of sexual gratification. The prosecutor in the closing argument in Peter's trial referred to what other reason there would be for Peter to have touched B.R.B.'s breast. As you saw in the brief, and I will not spend a lot of time reiterating, that also does not supplant and it does not replace the people's requirement of proving sexual gratification at the time of the touching. Mr. Holland in his written- It's a simple question. You said we might not agree, the court might not agree, the state doesn't agree, but why is a 50 plus year old man having teenagers sit on his lap and why is he tickling them? Because he's juvenile and he's immature. This is the conduct that is referred to in the string of case law that deals with juvenile cases, actually, including the case with the young man with an IQ of 48. Well, does your client suffer from some sort of learning disability so that his IQ is lower than the average 50 plus year old? No, and if he had, it would have been demonstrated in trial, but he is immature and that is not, neither is that, does that absolve the state from having to prove, as they have the burden of proof, to prove the element of sexual gratification. If it were as simple as saying what other explanation is there, that absolves the state from having to prove that element. It can never, the burden can never shift to the defendant to have to demonstrate why he had an explanation, but even if it did shift the burden and even if the people were able to get out of proving that requirement by shifting the burden to Mr. Holland, Mr. Holland provided the explanation that he was tickling Bella. This was a statement that he made before he was charged. He was consistent with that statement through the investigation up to and including his testimony trial. Doesn't that, aren't you presuming that his explanation was believed, which is counterfactual because if his explanation was believed, then they would, he would have been found not guilty? If your honor is referring to being believed by the jury, and I believe you are, the jury already didn't believe the testimony of the witnesses because they acquitted him on the two far more serious counts. What the state is attempting to do in this case is trying to bootstrap evidence from the stories that were told by the young ladies about the counts of acquittal and bootstrap those facts into backing into supporting and finding a justification for Peter's conviction on the count of conviction. That is not how it works. At the time of the touching, the statute is crystal clear. At the time of the touching, the touching has to be done for sexual gratification, not before, not after. And this, even in, even in the light most favorable to the people, all of those things that are set forth in the people's response brief on pages 16 through eight and through 19 rather, in the people's response brief, even in the taking of the light most favorable to the people, those are not related to the moment of the touching that occurred, that was explained as having been incidental to the tickling. That is, that's, that is in, that is clear. If I recall the two counts that the jury found him not guilty on, he never admitted that it was done either intentionally or accidentally. He denied those actions being taken, did he not? I'm sorry, the counts of acquittal? Yes. Yeah, that's correct. He only denied that those took place. Okay. So they believed him because he said he denied it and the testimony regarding whether he did it or not never really addressed whether or not what he didn't do would necessarily cause him to become libidinous or arouse, correct? So the question was in the other two or the distinguishing factor in the other two counts related to the fact that the jury didn't necessarily believe beyond a reasonable doubt that he committed the necessary contact with the necessary part of the victims, correct? They, I don't know that it is the purview and I'm going to get to the answer, your honor, and please, I'm not trying. Well, look at it this way. If he denied he did it, then he never made an explanation except to the extent that his explanation was he didn't do it. Okay. So either they believed him as to that explanation because there wasn't sufficient corroboration of the victim's testimony or evidence to indicate that his denial was false. I do not believe that the court can, you live by the sword, you die by the sword. The jury, I don't know that it's this court's purview to get in the head of the jury. However, I can answer I think the question best by saying that his blanket denial of doing anything sexual toward these young girls was uniform and consistent to the extent that your honor is asking about what was in the jury's head. The jury not only obviously believed that Mr. Holland's denial that anything sexual took place, they believed that, and then they also had to believe that the girl's stories regarding the counts of acquittal were also not believable or certainly not corroborated by any evidence sufficient to form a basis for a finding of guilt beyond a reasonable doubt. Well, all right, but did the jury hear or did they not hear about the incidents involving the bathroom door and the bathroom window? Well, they did hear those stories, yes. And did he not say, especially when he was looking in the bathroom window, that he did get aroused and since it was Saturday night, which apparently was something important to he and his wife, he took off his boots, went upstairs, and they had sex. If this evidence is properly in, why can't the jury use that evidence to go inside the charge that he's actually found guilty on or supplement the evidence on the charge he's found guilty on? Because the statute requires that the touching at the time be done with a sexual intent. But doesn't that make it more likely than not a piece of the circumstantial evidence that the jury could consider with respect to the actions alleged in count one? No, because the timing, the actions that are alleged at the time that Justice Hutchinson- I got that part. But here's my point. With respect to the bathroom window and the keyhole and all that, he says that got me aroused. Circumstantially, can they not believe him when he says, when I accidentally touched her breast, I wasn't sexually aroused? Can they use the totality of the circumstances to decide whether or not they believe him when he says I was not aroused? No, because there is no element that at the time that contact was made between Mr. Holland's hand and BRB's breast incident to the tickling that he had any of those feelings. That is nowhere in evidence. But it's proven by circumstantial evidence, the totality of circumstantial evidence. But then what I would say is Mr. Holland was clear and honest about the fact that when he looked at her- I agree with you. He may have been very honest, but that doesn't mean the jury had to believe him. No, no, no, no. And I guess my point is, at that time, he was very honest about that particular vision, seeing her in the bathroom becoming sexually aroused. Yes, he was he was candid about that. And that is what he reported to have been feeling. However, there's nothing to bridge that gap. And I understand you're saying circumstantially, but there's nothing to bridge that gap that any of those feelings were present at the time of the tickling, which caused the incidental touching. Other than the totality of the circumstances, which the jury was allowed to consider all of the evidence as to all counts. But that evidence wouldn't have been- By the nature of circumstantial evidence. But that evidence would not have been present at the time of the touching. Okay, but Mr. Kaver, he didn't get charged with this bathroom incident. I mean, this is something that they learned throughout the course of, excuse me, the course of the investigation. And they asked him about it as a indication, I suspect, of how being in the presence of this child, how he reacted. So why is looking at someone less, what do I want to say, less of an incentive than touching that same person? Well, I guess for a number of reasons, but one is not going to be tickling somebody as was described in the testimony, and then go have sexual relations with their wife the next moment. The circumstances here, and even if it were possible, it comes back to, I agree that it can be proven circumstantially, but there's nothing to connect the temporal distance between the touching. There's just no evidence at the time of the touching that he had any of those feelings. That could have come in many different ways. The state also could have charged Mr. Holland with several other types of offenses. It elected not to do so. At the end of the day, when that touching occurred, because it was incidental to the tickling by an immature 53-year-old man tickling a teenager, there's just no evidence of any sexual arousal at that time. We don't even learn about the incident, as you correctly state, with looking through the people having relations with his wife. We don't even learn about that until well beyond the tickling is alleged to have occurred. Well, there's another circumstance that's presented to the jury, and it's Snapchat. I don't know. I'm not a Snapchatter, so I confess total ignorance. My grandchildren are, and I don't like it because they describe lots of things on Snapchat, and they're teenagers. Why does a 53-year-old man have a Snapchat account? Well, I have a Facebook account. I admit I don't have a Snapchat account. I have an Instagram. I'm not accusing you of anything, Count. No, no, no. And all I'm trying to do is just maybe a little humor here. Well, Facebook and Instagram are nothing like Snapchat, at least by the knowledge I have of it not having such an account. Snapchat is used for silly things. What I would say is silliness is definitely Mr. Holland's brand, but that, again, I would hate to say anything that would in any way acknowledge that that also having a Snapchat account in no way would absolve the state of its ability and its requirement to prove that element of sexual gratification without war. Your time is up, Counsel. You'll have an opportunity to make rebuttal, and I will ask if the panel has any other questions. No, thank you. I don't want to admit anything else. Okay, thank you. Thank you. Ms. Wells, you may proceed. Thank you, Your Honor. Your Honors, Counsel, the main issue here that we've been discussing so far is the sexual gratification element, and the case law is quite clear that that can be proven by circumstantial evidence, but we don't even have to go to circumstantial evidence. That certainly adds to it in this case. BRB testified that he played it off like he was tickling her, but he touched her breast. More importantly, TA, who actually witnessed the touching of the breast during the tickling incidents and did not witness the other two incidents that he was found not guilty of, that is another big difference in those counts. She said it was uncomfortable to watch, that it was not not sexual, so a double negative, which doesn't make that easy, and that's on page 215 to 216 of the record, and she described it as almost like foreplay. So if you want to talk about sexual gratification or arousal, TA's testimony alone establishes that this was of a sexual nature, this contact. In addition, you have his own statements that he went too far. Although he did try to explain that it was tickling, it happened more than one occasion. He did it repeatedly, and that's through his own admission that he accidentally touched her breast while tickling BRB, and then he did it again. So the circumstantial evidence then you get into, as the court correctly discerned, the Jackson case says that you don't have to look at each piece of evidence and come up with innocent explanations, and while counsel is saying there's a temporal requirement, that is an inference that the jury gets to decide, and there was evidence. Counsel, even in his reply brief, admits the facts added by the people could give inference to sexual gratification, and he admits that such inference may be proper. That's on pages one to consider the counts that he was found not guilty of. It goes to weight, not admissibility, and this court isn't re-weighing the evidence. We're not taking the evidence piecemeal, but you look at everything. He rubbed her butt during a massage BRB, the hand down the pants where he rubbed her vagina. While we know he was found not guilty of that, that is part of circumstantial evidence. He grabbed her hair, exposed his penis, and made contact between her mouth and his penis. Again, found not guilty, but it goes to weight, not admissibility. He kissed her and tried to French kiss her, and in the Burton case, French kissing goes directly to sexual gratification. When it is an adult, this is an adult, as opposed to a juvenile, the act itself under Burton can give the inference of sexual gratification or arousal. He spied on her in the bathroom through the window and through the keyhole. He was so aroused, he went and had sex with his wife. Then you have the text messages where he's calling her cutie, asking her to come over. The whole nature of that communication is someone who is infatuated with this young girl and wants to have contact with her. You have the contact with TA where he slaps her on the buttocks. He grabs her thigh in the truck frequently, screenshots her younger sister in short shorts, causing TA to stop going over to the house. When you look at it, and Justice Jorgensen, I think, was the one that talked about circumstantial evidence being the totality. It is the jury's responsibility and their ability to draw the proper inferences from all of this evidence. While he may claim an innocent explanation, Lester and Scott clearly say it is up to the jury to determine whether they believe that innocent explanation or not. I think the court has before it a clear outline of how the circumstantial evidence does play into that element, the sexual gratification or arousal. It is the law that it does not have to be directly proven. We don't have to have an admission. All of these factors taken together do prove that element. I don't know if the court has any questions for me or if you want me to address either of the other two sections. I think the evidence was laid out very clearly in my brief as far as the circumstantial evidence we believe shows the sexual gratification or arousal. Any other questions? I thought you were asking if there were any other questions. If there were any other questions, otherwise I would go and touch on the motion to suppress very briefly. The motion to suppress, the court very clearly looked at whether he was in custody, applied the factors under slaughter. I'm sorry, it's later, not slaughter. And looked at the time length and mood of the interrogation or the questioning. It was a very short questioning with a lengthy break to do the phone extraction and was cordial by all intents and purposes. There were only two police officers. They were in plain clothes with no firearm. There wasn't a family member there, but as the court noted, that was the defendant's choice because he didn't bring anybody with him. There was no indicia of formal arrest. I just was wondering, it's really not clear, was he arrested after that incident in the police needed to go? He did leave. The detectives testified that they walked out of that detective. It wasn't detective Juanez. It was the other detective walked him out of the area and escorted him back out to the front of the building. But there was some indicia of arrest. They gave him his Miranda warnings. They gave him his Miranda warnings, but there are multiple reports that indicate Whitfler, McDaniel, and Vasquez all indicate that just merely giving Miranda does not trigger it. But that is an indicia of an arrest, especially to a layperson. It can be, but that alone does not change it to a custodial interview. You argued that there was no indicia, and I would beg to differ. That is to me some indicia of an arrest. Put another way, it is not proof positive. No, it is not. It's indicia. Next issue would be whether the statement was voluntary. The court clearly went through the custody, so then you just determine whether it was voluntary under the totality of the circumstances. The court considered the same factors and found that he was not. The only issue would be the reference to the attorney. As the people pointed out, counsel does not cite any legal authority. The sole reference to an attorney by somebody who is not in custody changes that to a non-voluntary statement. In addition, the court clearly found that the second report more accurately indicated what he said about an attorney, that he did not actually ask for an attorney, but was more thinking out loud about whether he might need an attorney. Counsel, I want to ask about that. That second report was precipitated after the assistant state's attorney read the first report, right? Yes, and asked what... And so whose words are in that second report? The words of the assistant, or the words of the police officer? The words of the police officer in the second report, the testimony was that the second report was an exact quote of what the defendant said, as opposed to a generalization. Was there a reason why he didn't put that in the first report when it was written maybe a day or so after the event? He explained that he thought in his testimony, he explained that he thought it was clear, but when he went back and read it, as many of us do, we go back and read our writing. What was clear to him was not clear to somebody else that was that's why he wrote the second report was to clarify it, not because the assistant state's attorney told him what to put in there. But he didn't just on his own decide to write a second report. It was only after he had a discussion with the prosecutor. Right, after he was asked about this, he figured out that it wasn't as clear as he thought, that was his testimony, that that first report did not accurately represent what actually happened. So he wrote the second report with the actual quote, the court clarified multiple times, what were the exact words, the second report is the exact words, that's a quote. And he said, yes, that's a quote. And you have the second officer who also says that the language actually used was what was in the second report. So, and finally, on the last issue, which I'll touch on briefly, the burden shifting, I don't believe that there is really a big issue with this. When you look at the context, which is what the requirement is, you consider the entire context of the closing argument, it is clear that counts that the prosecutor was talking about circumstantial evidence, and that they had to, that they could consider circumstantial evidence and getting to sexual gratification. He was asking rhetorical questions about how do you meet that burden of proof, and he responded with circumstantial evidence. It is clear from the argument starting on the supplemental record on page nine and going through page 11. Regardless, counsel, defendant only points to a single comment that was made in context of explaining circumstantial evidence. The prosecutor reminded the jury of the burden of proof, the jury was properly instructed by the court that the people bear the burden of proof, that the defendant was not required to prove his innocence. And the fact that he was found guilty of two of the counts in relation to touching of the vagina of BRB shows that they were not so clear. We believe that even if the court finds that the sole comment pointed to by defendant was error, that it is harmless error, but we strongly argue that this is well within the wide latitude of closing argument in the purpose of advising of the law in context of circumstantial evidence, which can be used to determine whether somebody has sexual gratification or arousal. So with that being said, I think those are the main issues before the court and I've addressed them all unless the court has any other questions for me. Any other questions? No, thank you. Thank you. This isn't so much a question yet. Can you see yourself right now on the screen? Yes. Can you see the circles of light on your glasses? I can. They look like lifesavers. I have a ring light because I have the background and so it does reflect on my glasses. Yeah, so my only point is maybe if you made it an oblique angle, it would reflect on your glasses, but it would reflect away from the lens of the camera so that it wouldn't. There you go. Okay, that's just a cinematographical improvement hopefully because I found it somewhat distracting to look at lifesavers on your glasses. I apologize for that and I will do the angle better the next time. Mr. Caver, you have five minutes for rebuttal. Thank you. I'd like to address the points in reverse chronological order. The burden shifting by the assistant state's attorney in his closing argument, it's evident by nothing more than the court's questions today during oral argument that that is exactly the effect that the prosecutor's words in having the jury consider what would be an appropriate explanation for the touching of anybody. That's exactly what those words were intended to inject to the jury. Those weren't rhetorical. It was not a rhetorical comment and to the extent that it was alleged to be a rhetorical comment, there's nothing that's rhetorical in front of a jury. Every single word is taken by a jury. Jurors are lay people who are listening on pins and needles to every single word that we say in that courtroom and precisely because your honors have asked the questions you have about why is a 53-year-old man tickling a 16-year-old girl? That's exactly the effect it has on lay people. If it has that effect on trained attorneys and justices of the appellate court, imagine what effect those words have on lay people. That was basically, well, I'm not going to explain why I asked the question, but again, I'm talking about the circumstances that were presented in this testimony. He did present his age. He did present his occupation. He did present during the course of the testimony, the girl's ages were the same. Maybe the state's attorney's argument could have been softened, but it's the same basic issue. All of these circumstances seem to indicate that there's something going on. But his words were very carefully chosen to ask what other explanation there was and that was why I take issue and that's why it's an issue that is being argued. I would like to take a moment, if there are no other questions on that issue, to move then to the .4 and the .8 supplements that were drafted. There is simply no believable explanation that the following words could have any way been misinterpreted to anybody who is fluent in the English language. Quote, at this point, Peter told us that he was no longer comfortable talking to us and requested that an attorney be present, period, end of quote. That is a supplement to the record, page 19. It is page 3 of the .4 report drafted on 8-16-2018. There is nothing about those words that is unequivocal or able to be misinterpreted or requires clarification whatsoever. With regard to .1, the- Would that have been a rhetorical question? Which question, Judge? The, or maybe I shouldn't say a rhetorical question. Maybe it was a question. Maybe it was just a rhetorical statement. The quote that you quoted, you claimed during a closing argument that the statement made by the attorney about, is there any other explanation? And you were arguing that it couldn't be rhetorical. Well, whether it is or it isn't, what about this statement that your client made that was amended in a supplemental report? Could the statement made by your client, would it not be a rhetorical question or a rhetorical comment? I'm unaware of any- So, my point is, is that yes, it can be interpreted as given. But the question then is, is it given as a rhetorical question or is it given as a declarative statement? So- Well, the quote that I just read was written by the officer as a declarative statement. That was- How do you know that? Well, there's just no, other than, and please, I do not want you to interpret this as a flip answer to your thoughtful question, but as somebody who's fluent in the English language for 42 years, there is a police report is not written for entertainment. A police report is written to accurately convey the facts as the sworn law enforcement officer is sworn to uphold the law and is sworn to do. And there just is, there is no other, there's no other way to interpret those words without bending individual words definitions. Okay. Your time is up. Are there any other questions? No, sir. Thank you. No, thank you. Thank you. We'll take the case under advisement and render a decision in apt time. Thank you for making the oral arguments today. Thank you very much. Finally, I'm sorry for any delay in starting the case. Thank you. We apologize. Mr. Clerk, will you close out the case? Yes, Your Honor.